WILLIAM G. STRIPP, State Bar No. 154468
General Counsel for Plaintiff
2010 El Camino Real, 852
Santa Clara, California 95050
e-mail: willstripp@willstripp.com
Tel: 505-783-4138
Fax: 505-783-4139
Plaintiff:
INTERNATIONAL TECHNOLOGICAL
UNIVERSITY FOUNDATION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL TECHNOLOGICAL UNIVERSITY FOUNDATION,<br><br>Plaintiff,<br><br>vs.<br><br>WASC SENIOR COLLEGE AND UNIVERSITY COMMISSION; AND UNKNOWN PERSONS I THROUGH 100 Defendants. | Case No<br><br>**COMPLAINT FOR MONETARY DAMAGES FOR IMPROPER TERMINATION OF ACCREDITATION DUE TO VIOLATION OF COMMON LAW DUE PROCESS (20 U.S.C. § 1099b; 34 C.F.R. §§ 602.20, 602.25 ) BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; DEFAMATION; RACIAL DISCRIMINATION IN THE MAKING AND ENFORCEMENT OF CONTRACTS (42 U.S.C. § 1981);  and for DECLARATORY AND INJUNCTIVE RELIEF (22 U.S.C. § 2201)** |

## INTRODUCTION AND PARTIES

1. Plaintiff International Technological University Foundation ("ITU") is a global multiethnic nonprofit institution of higher education based in Santa Clara, California. ITU was founded in 1994 by Professor Shu-Park Chan to be the world's first global university network model. ITU emphasizes the STEM fields (Science, Technology, Engineering and Mathematics) in its course offerings. ITU's student body has largely been comprised of international students, predominately from India and the People's Republic of China.

4907-7867-5263.12

ITU's commitment to protecting the rights of its international multiethnic students has resulted in it facing racial discrimination, including from Defendant in this matter.

2. Defendant WASC Senior College and University Commission ("WSCUC") is a California nonprofit corporation headquartered in Alameda, California. WSCUC was originally part of the Western Association of Schools and Colleges ("WASC"), which was formed on March 12, 1962. WSCUC split off from WASC and filed separate Articles of Incorporation on December 21, 2012, and then renamed itself on May 16, 2013. WSCUC characterizes itself as an institutional accrediting agency recognized by the U.S. Department of Education that serves public and private higher education institutions around the world.  WSCUC alleges that its accreditation aids institutions in developing and sustaining effective educational programs and assures the educational community and the general public that an accredited institution has met high standards of quality and effectiveness. However, WSCUC has not met its obligations as a California Nonprofit Corporation. WSCUC did not file its Statement of Information, which was due on December 31, 2022. The failure to file can result in a monetary penalty and the suspension or forfeiture of its California registration. If WSCUC's registration is lost or suspended, it cannot operate legally in California, including losing its ability to defend itself in Court. In August 2025, WSCUC attempted to file a California Form RRF-1 with the California Department of Justice but was rejected because it had never filed the Initial Registration Form (Form CT-1). WSCUC's failure to comply with California's nonprofit corporate requirements makes it more difficult for Plaintiff  ITU to proceed with its civil complaint.

3. Plaintiff is unaware of the true names and capacities, whether individual, corporate, associate or otherwise, of the Defendants sued herein as Unknown Persons 1 through 100 or any of them, and for that reason sues said Defendants, and each of them, by such

fictitious names. Plaintiff believes that various officers and directors of WSCUC, past and present, may have been involved in damaging Plaintiff. Plaintiff will seek leave of Court to amend this complaint to state the true names and capacities of Unknown Persons 1 through 100, inclusive, when those names and capacities have been ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated herein as an Unknown Persons is responsible for all, or a portion of, the harm suffered by Plaintiff, as alleged herein.

## JURISDICTION AND VENUE

4. Jurisdiction is vested in the United States District Courts through 20 U.S.C. § 1099b regarding the improper termination of accreditation claim due to a violation of common law due process and through 28 U.S.C. § 1331 (federal question jurisdiction) regarding the claim under 42 U.S.C. § 1981 regarding termination of the accreditation contract based upon the corporation's ethnic characteristics.

5. The United States District Court can exercise Supplemental Jurisdiction over the California state law claims of Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, and Defamation pursuant to 28 U.S.C. § 1367 as they form part of the same case or controversy and arise from a common nucleus of operative fact.

6. Venue is properly based in United States District Court for the Northern District of California under 28 U.S.C. 1391 as both Plaintiff ITU and Defendant WSCUC are based in that district.

7. 20 U.S.C. § 1099b(e) requires the submission of any dispute involving the termination of accreditation to initial arbitration prior to any other legal action.

8. WSCUC was formerly associated with the Council for Higher Education Accreditation ("CHEA"), which had an arbitration protocol in place.

3

9. On or about December 17, 2024, without seeking the approval or agreement of ITU, WSCUC withdrew from its affiliation with CHEA.

10. WSCUC did not want to comply with CHEA's standards involving DEI (Diversity, Equity and Inclusion), which are important to ITU as a global and multiethnic institution of higher education.

11. When WSCUC withdrew from its association with CHEA, WSCUC did not have an arbitration protocol in place through which ITU could demand arbitration after the withdrawal of its accreditation by WSCUC.

12. ITU and WSCUC could not agree upon an arbitration protocol and therefore ITU is filing its complaint in accordance with 20 U.S.C. § 1099b(f) which states that any "civil action brought by an institution of higher education"…"involving the denial, withdrawal, or termination of accreditation of the institution of higher education, shall be brought in the appropriate United States district court."

13. ITU brings this action against WSCUC based largely upon WSCUC's withdrawal of ITU's accreditation on June 27, 2025, and WSCUC's discriminatory practices leading to the withdrawal of accreditation.

**GENERAL BACKGROUND**

14. Accreditation of institutions of higher education in the United States is a voluntary independent peer review process through which the quality of a college or university's programs, faculty, infrastructure, finances and student resources is evaluated.

15. Institutions of higher education have the right to choose whether or not to participate in the accreditation process, which is a voluntary, self-regulatory system.

16. The U.S. Department of Education does not accredit colleges and universities in the United States.

4907-7867-5263.12

17. Instead, the Council for Higher Education Accreditation ("CHEA") and the U.S. Department of Education provide oversight of the nongovernmental accrediting agencies that conduct the accreditation process.

18. While accreditation is not a mandatory requirement for a college or university to operate in the United States, accreditation is necessary as a practical matter for an institution of higher education to admit certain categories of students.

19. Students from foreign countries who want to study in the United States have to navigate through various governmental channels to obtain the Visas necessary for entry into the United States.

20. The Student and Exchange Visitor Program (SEVP) is part of U.S. Immigration and Customs Enforcement (ICE) that oversees the Student and Exchange Visitor System (SEVIS), which monitors nonimmigrant students (F-1, M-1 visas) and their dependents.

21. SEVP's role in student immigration involves certifying schools to enroll foreign nationals, tracking students' records, and ensuring compliance with U.S. immigration laws.

22. SEVP certifies academic and vocational institutions to host nonimmigrant students.

23. An SEVP certified school issues a Form I-20 ("Certificate of Eligibility for Nonimmigrant Student Status") to a prospective student. The prospective student then uses the Form I-20 to apply for a student visa through the U.S. Department of State, which also oversees the process.

24. While it is not mandatory for either the Student and Exchange Visitor Program (SEVP) as part of U.S. Immigration and Customs Enforcement (ICE) or the United States Department of State to require that an institution of higher education which is located in the United States to be accredited before foreign students can enroll, as a practical matter, both ICE and the US Department of State defer to college accreditors investigation of colleges and universities rather than conducting their own independent investigations.

**FACTUAL ALLEGATIONS SPECIFIC TO THE COMPLAINT**

25. ITU is a nonprofit global institution of higher education founded in 1994 and based in Santa Clara, California.

26. Institutions of higher education in the United States have the right to pursue their own educational mission and values, which is a right inherent in institutional autonomy.

27. ITU emphasizes the STEM fields (Science, Technology, Engineering and Mathematics) in its course offerings.

28. ITU provides its course offerings to students from around the world with the majority of its students coming from India and the People's Republic of China.

29. Both SEVP and the U.S. Department of State rely heavily upon the accreditation status of an institution of higher education in making the decision about whether or not to issue a visa to a prospective nonimmigrant student.

30. Institutions of higher education have the right to select an accreditor

31. ITU entered into an accreditation agreement with Defendant WSCUC in 2012.

32. In July 2018, WSCUC reaffirmed ITU's accreditation for a period of six years.

33. In choosing Defendant WSCUC as its accreditor, ITU relied upon WSCUC's statements that it does not discriminate on the basis of race, color, religion, national or ethnic origin, sex gender identity, sexual orientation or disability in its accreditation activities.

34. ITU expected WSCUC to act in a nonbiased manner during the ongoing accreditation evaluation process.

35. When ITU chose WSCUC to act as its accreditor, WSCUC was affiliated with CHEA as an overseer of WSCUC's accreditation practices.

36. CHEA was committed to the inclusion of Diversity, Equity and Inclusion ("DEI") in its accreditation evaluation oversight.

37. Given the nature of ITU's international student body, DEI is important to the ongoing STEM programs being offered at ITU.

38. In December 2024, without consulting with or obtaining the permission of ITU, WSCUC withdrew from its affiliation with and oversight by CHEA largely because of CHEA's inclusion of DEI in the accreditation evaluation process.

39. ITU was willing to and did provide WSCUC with all information necessary to evaluate the quality of ITU's program.

40. In response, WSCUC stonewalled ITU and did not allow it to provide the information necessary to properly and reasonably evaluate ITU as a multiethnic institution of higher education.

41. WSCUC's act of withdrawing ITU's accreditation on June 27, 2025 was based upon bias and fear rather than any reasonable evaluation of the facts.

42. WSCUC is worried about losing its own certification by the U.S. Department of Education as a nongovernmental accrediting agency rather than acting as a proper accreditor.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF COMMON LAW DUE PROCESS**

43. Standards for the due process which Defendant as an accrediting agency must provide to member institutions of higher education are established by Congress and the United States Department of Education. (20 U.S.C. § 1099b; 34 (C.F.R. §§ 602.20, 602.25)

44. When an accreditor wishes to enforce its standards against a member and withdraw accreditation, the accrediting agency has a duty to provide due process throughout. The accreditor must, *inter alia*:

    a. "Provide the institution or program with a written timeline for coming into compliance that is reasonable . . . [and up to] four years" (34 C.F.R. § 602.20(a)(2));

    b. "Follow its written policies and procedures for granting a good cause extension that may exceed the standard [four year] timeframe described in paragraph (a)(2) of this section when such an extension is determined by the agency to be warranted" (34 C.F.R. § 602.20(a)(3));

    c. Apply clear standards and apply such standards with consistency (34 C.F.R. § 602.18(a)-(b));

    d. Use "procedures that afford an institution or program a reasonable period of time to comply with the agency's requests for information and documents" (34 C.F.R. § 602.25(b)); and

     e.  Provide institutions the right to appeal any adverse action prior to the action becoming final including "the right to . . . employ counsel to represent the institution or program during its appeal, including to make any presentation that the agency permits the institution or program to make on its own during the appeal." (34 C.F.R. § 602.25(f)(2)).

45. Defendant failed to comply with these requirements.

46. Under its 2013 Handbook of Accreditation Defendant promised to:

    a.  "Apply with good faith effort its procedures and standards as fairly and consistently as possible." (WSCUC 2013 Handbook of Accreditation, at 5.);

    b.  "Provide institutions a reasonable period of time to comply with Commission requests for information and documents." (*Id.*);

    c.  "Value the wide diversity of institutions it accredits and consider an institution's purpose and character when applying the Standards." (*Id.*); and

    d.  [W]hen an institution failed to meet one or more of the Standards, "notify the institution of these findings and give the institution up to two years from the date of this action to correct the situation." (*Id.* at 44.)

47. Defendant failed to meet its own promised standards.

48. WSCUC did not have appropriate evidentiary standards in place for the submission of sworn statements or certified documents to support a member institution's argument for continued accreditation.

49. In withdrawing ITU's accreditation without providing a reasonable amount of time for ITU to submit supporting evidences, denying ITU requests for reasonable extensions of time and a good cause continuance, WSCUC failed to follow its own policies and practices and applicable federal law, and acted unreasonably, arbitrarily, and capriciously. ITU was denied due process as a result.

50. Throughout the process of accreditation review, WSCUC did not acknowledge or meaningfully respond to ITU's objections and communications outlining procedural concerns and due process failures.

8

51. A decision by an accrediting association is invalid if the decision is arbitrary capricious, or unreasonable.

52. Plaintiff was harmed because of WSCUC's failure to satisfy due process.

53. Plaintiff suffered and continues to suffer financial losses, reduced student enrollment, and reputational harm, among other harms, because of WSCUC's arbitrary and capricious decision to withdraw ITU's accreditation.

## SECOND CAUSE OF ACTION: BREACH OF CONTRACT

54. Plaintiff ITU entered into an accreditation contract with Defendant WSCUC in 2012.

55. In July 2018, WSCUC reaffirmed ITU's accreditation for a period of six years.

56. The accreditation contract included oral, written, and implied-in-fact terms.

57. The terms of the accreditation contract were clear enough that both parties could understand what each was required to do.

58. The terms of the contract included that Plaintiff would pay Defendant required fees and that in return Defendant would provide Plaintiff accreditation services.

59. Plaintiff did all, or substantially all, of the significant things that the contract required it to do, including providing Defendant with access to all information required to conduct a reasonable accreditation evaluation.

60. Despite Plaintiff continuing to fulfill all of its obligations under the accreditation contract, on June 27, 2025, Defendant withdrew its accreditation of Plaintiff.

61. Plaintiff has been harmed as a result of Defendant's action.

62. Defendant's breach of contract was a substantial factor in causing Plaintiff's harm.

## THIRD CAUSE OF ACTION: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

63. Plaintiff ITU and Defendant WSCUC entered into an accreditation contract in 2012.

64. The accreditation contract entered into between Plaintiff and Defendant included an implied promise of good faith and fair dealing.

65. Plaintiff did all, or substantially all, of the significant things that the contract required it to do, including providing Defendant with access to all information required.

66. All conditions required for Defendant's performance of its obligation to accredit Plaintiff occurred.

67. Rather than meet its obligations under the accreditation contract, on June 27, 2025, Defendant withdrew its accreditation of Plaintiff.

68. By doing so, Defendant did not act fairly and in good faith.

69. Plaintiff was harmed by Defendant's conduct and its entitled to monetary damages, including punitive damages, according to proof.

### FOURTH CAUSE OF ACTION: DEFAMATION PER SE

70. Defendant made statements that Plaintiff was unfit to operate an institution of higher education, and was withdrawing its accreditation of Plaintiff as a result.

71. Defendant's statements were false and were presented as facts, not just an opinion.

72. Defendant communicated its statements to the U.S. Department of State, the U.S. Department of Homeland Security, and published the statements on its website which is accessible by the public.

73. Defendant was at least negligent in determining the truth or falsity of its statements.

74. Plaintiff has been damaged as a result of Defendant's statements, and is entitled to monetary damages, including punitive damages, according to proof.

### FIFTH CAUSE OF ACTION: RACIAL DISCRIMINATION IN THE MAKING AND ENFORCEMENT OF CONTRACTS (42 U.S.C. § 1981)

75. Plaintiff ITU was founded by an individual of Chinese descent and has a multiethnic identity. Plaintiff stands by the principle of protecting its students from the People's Republic of China, India, and other foreign countries, from racial discrimination

76. Plaintiff was a party to an accreditation contract with Defendant.

77. Plaintiff attempted but was unable to enjoy all benefits, privileges, terms and conditions of the contractual relationship.

10

78. Plaintiff's inability to enjoy all benefits, privileges, terms and conditions of the contractual relationship was because of Defendant's purposeful discrimination against the Plaintiff on the basis of Plaintiff's race.

79. Plaintiff has been damaged by Defendant's purposeful discrimination, and is entitled to monetary damages, including punitive damages, according to proof.

**FIFTH CAUSE OF ACTION:
FOR INJUNCTIVE AND DECLARATORY RELIEF
(28 U.S.C. § 2201 *et seq.*)**

80. Justiciable and actual controversies exist before this Court with respect to Defendant's breach of its accreditation contract with Plaintiff and improper withdrawal of Plaintiff's accreditation.

81. A declaratory judgment resolving this question is likely to prevent future harm to Plaintiff resulting from ongoing disputes between Plaintiff and Defendant and clarify or settle the legal rights of the parties to this action.

82. Plaintiff will suffer irreparable injury if Defendant's withdrawal of Plaintiff's accreditation is permitted to stand. If equitable relief is not granted, international students may be unable to attend ITU because such students will be denied access to necessary F-1 visas, which must be certified by the Student and Exchange Visitor Program ("SEVP").

83. Plaintiff has been damaged as a result of Defendant's actions.

    **WHEREFORE,** Plaintiff ITU respectfully requests:

    a) Monetary damages, including punitive damages, according to proof;

    b) A declaration that WSCUC improperly withdrew ITU's accreditation, and that WSCUC's determination is therefore vacated;

    c) A permanent injunction vacating WSCUC's decision withdrawing ITU's accreditation, and returning the parties to the positions they were in prior to WSCUC's withdrawal of ITU's accreditation;

    d) An Order retaining jurisdiction over this matter to enforce the terms of the foregoing injunctive relief;

4907-7867-5263.12

e) Such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial in this matter.

DATED: September 29, 2025

Respectfully submitted,
*/s/ William G. Stripp*
**WILLIAM G. STRIPP**
**Attorney at Law**
2010 El Camino Real, 852
Santa Clara, California 95050
e-mail: willstripp@willstripp.com
Tel: 505-783-4138
Fax: 505-783-4139